THE STATE OF OHIO, APPELLANT, *v.* THOMPSON, APPELLEE.

(No. 80-1055—Decided June 24, 1981.)

*Mr. David E. Lighttiser,* prosecuting attorney, *Mr. Stephen E. Schaller* and *Mr. Robert L. Becker,* for appellant.

*Mr. John R. Lindsey,* for appellee.

*Per Curiam.* As a general rule, evidence of previous or subsequent criminal acts, wholly independent of the criminal offense for which a defendant is on trial, is inadmissible. *State* v. *Wilkinson* (1980), 64 Ohio St. 2d 308, 314; *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 68-69; *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 158; *State* v. *Hector* (1969), 19 Ohio St. 2d 167, paragraph one of the syllabus; *Whiteman* v. *State* (1928), 119 Ohio St. 285; *State* v. *Lawrence* (1906), 74 Ohio St. 38.

R. C. 2945.59 codifies exceptions to this general rule. It provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Under this statute, evidence of other criminal acts of a defendant is admissible *only* when it "tend[s] to show" one of the matters enumerated (motive, intent, absence of mistake or accident, or scheme, plan or system in doing the act), and *only* when one of those matters is relevant to proof of the guilt of the defendant of the offense in question. *State* v. *Burson, supra,* at page 158; *State* v. *Curry, supra,* at page 69; *State* v. *Wilkinson, supra,* at page 315. Such evidence is never admissible when its sole purpose is to establish that the defen-

dant committed the act alleged of him in the indictment. *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391.

The state contends that admission of Brenda's subsequent acts testimony was authorized by R. C. 2945.59, in that it tended to establish a scheme, plan or system of the appellee in having sexual contact with Brenda during the period between June 1, 1977, and September 30, 1977.

"Other acts" testimony is relevant and, thus, admissible, under the "scheme, plan or system" exception of R. C. 2945.59 where those acts form part of the immediate background of the crime charged, and hence are "inextricably related" to the act alleged in the indictment; that is, where the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. *State* v. *Wilkinson, supra; State* v. *Lytle, supra; State* v. *Curry, supra.* " 'The jury is entitled to know the "setting" of a case.' " *State* v. *Wilkinson, supra,* at page 317.

According to Brenda's testimony, appellee's subsequent acts occurred, at the earliest, ten days after the time alleged in the indictment. Some of the subsequent acts occurred nearly two years later. Here, as in *State* v. *Eubank* (1979), 60 Ohio St. 2d 183, the acts testified to were "chronologically and factually separate occurrences" (*supra,* at 186). They are not "inextricably related" to the acts alleged in the indictment.

Identity was not an issue at trial. Indeed, the only factual issue contested at trial was the timing of the appellee's first sexual contact with his daughter, *i.e.,* whether it occurred prior to Brenda becoming 13 years of age. Appellee's subsequent acts are not relevant to a determination of when the first such act occurred.

The sole purpose of the subsequent act evidence in this case was to convince the jury that the appellee was deserving of punishment, and that it was likely he had sexual contact with Brenda prior to her 13th birthday because he engaged in similar conduct thereafter. As such, the testimony did not fall into the "scheme, plan, or system" exception of R. C. 2945.59 and was improperly allowed.

Because we find that subsequent acts testimony was im-

permissibly allowed, it is unnecessary to decide whether the trial court's instructions to the jury complied with the requirements of *State* v. *Flonnory, supra.*[2]

The state contends that the allowance of such testimony was harmless error beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 U. S. 18. Unlike *State* v. *Eubank, supra,* this cause was tried to a jury and not a judge. The subsequent acts testimony was highly inflammatory in nature.[3] Upon a complete review of the record we conclude that there is a reasonable possibility that this testimony contributed to the accused's conviction, hence the error in admitting it cannot be considered harmless. *State* v. *Lytle, supra.*

The time at which defendant had improper sexual contact with his daughter was a critical issue in this case. Defendant could be convicted of gross sexual imposition only if his daughter was less than 13 years of age at the time of the occurrence. If his daughter was over 13 at the time, defendant's conduct would constitute the lesser offense of sexual imposition in violation of R. C. 2907.06. There remains the real possibility that defendant was convicted of gross sexual imposition because of the improper admission of testimony that he committed sexual imposition herein subsequent to his daughter becoming 13 years of age. Being convicted of a higher degree of the crime (a felony rather than a misdemeanor) under such circumstances constitutes prejudice even though such prejudicial testimony might establish commission of the lesser degree of the crime.[4]

---

[2] "Where evidence has been admitted for a limited purpose which the state claims shows the defendant did certain 'other acts' which show the motive or intent of the accused, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question which is alleged in the indictment, the jury should be instructed that such evidence must not be considered by them as any proof whatsoever that the accused did any act alleged in the indictment." *State* v. *Flonnory, supra,* at 129.

[3] Brenda's testimony indicated that the nature of appellee's sexual contacts, while never reaching the level of sexual intercourse, became increasingly egregious with time.

[4] In order that the nature of the record not be misunderstood, the following additional comments are appropriate. (1) Brenda's testimony on direct examination concerning incidents occurring during the period charged in the indictment (before her 13th birthday) consumes less than one full page of the trial transcript. Of the re-

Finally, we find no merit in the state's contention that Brenda's testimony concerning appellee's subsequent acts is authorized by R. C. 2907.05(D),[5] in that it involved sexual activity between appellee and the victim of the alleged crime. We note that R. C. 2907.05(D) in general, is a statute or prohibition, not authorization. Because consent is not a defense to the crime with which appellee was charged, the existence of Brenda's consent to appellee's conduct could not have been a material factual issue of which the testimony might have been probative. Cf. *State* v. *Graham* (1979), 58 Ohio St. 2d 350; *State* v. *Gardner* (1979), 59 Ohio St. 2d 14. We reiterate that the only contested fact at trial was whether appellee had sex-

mainder of her direct examination, 12 out of 17 pages of transcript concern contacts occurring subsequent to her birthday and was erroneously admitted. On cross-examination defense counsel obtained an admission from Brenda that she "had trouble remembering dates." Similarly, defense counsel confronted Brenda with a statement made in June 1978, in which Brenda stated that "seven months ago [i.e. *December* 1977] it all started." This court, as a reviewing body, does not weigh the credibility of witnesses. (2) The defendant made a voluntary statement on August 9, 1979, in which he admitted that "on several times I did make physical contact with Brenda." No inference can be drawn from the statement that such incidents occurred prior to October 13, 1977. (3) Sgt. Dennis Woods of the Newark Police Department, the prosecution's sole remaining witness, testified that he arrested Thompson on August 9, 1979, following issuance of the indictment, and took his statement after advising him of his rights. Sgt. Woods further testified that specific dates of such conduct were not discussed, only that Thompson admitted that his conduct with Brenda had been going on for some time and had gone on prior to 1979. His testimony was in no way probative of the state's contention that defendant's abhorrent conduct occurred as early as June, July, August or September of 1977, the only time period relevant to this prosecution.

[5] R. C. 2907.05(D) provides:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

ual contacts with Brenda before her 13th birthday. Because the challenged testimony has no relevance to this issue, it could not have been "material to a fact at issue in the case," and was not admissible under R. C. 2907.05(D).

For the foregoing reasons the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. Brown, Whiteside, Sweeney and C. Brown, JJ., concur.

Celebrezze, C. J., Locher and Holmes, JJ., dissent.

Whiteside, J., of the Tenth Appellate District, sitting for P. Brown, J.

Celebrezze, C. J., dissenting. The most restrained observation that I can make about this tragic case is that the record, considered as a whole, renders any conceivable error harmless beyond a reasonable doubt. Accordingly, I must respectfully dissent.

I agree with the majority that the disputed testimony should not have been admitted in evidence pursuant to the scheme or plan exception of R. C. 2945.59. As this court ruled in *State* v. *Curry* (1975), 43 Ohio St. 2d 66, "other acts" testimony, in order to be admissible under the scheme or plan exception, must: (1) illustrate the immediate background of the crime charged, such that without this testimony it would be virtually impossible to prove that the accused committed the crime; or (2) establish the identity of the perpetrator. See, also, *State* v. *Wilkinson* (1980), 64 Ohio St. 2d 308.

Clearly, additional sexual contact, prior or subsequent to the time frame charged in the indictment, does not form the immediate background of the crime charged, either chronologically or substantively. Moreover, the state has not demonstrated that it would be impossible to prove gross sexual imposition without this additional testimony. Finally, the defendant's identity was not a disputed issue at the trial.

The mere fact that error was committed, however, should begin, not end, our review of Thompson's conviction. The critical consideration under the facts at bar is whether this error was prejudicial. *Chapman* v. *California* (1967), 386 U. S.

18; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183; *State* v. *Adams* (1978), 53 Ohio St. 2d 223; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391; *State* v. *Abrams* (1974), 39 Ohio St. 2d 53.

Putting aside the challenged "other acts" testimony, the independent evidence of guilt is so overwhelming in this case that, in my estimation, it cannot be seriously contended that the aforementioned error is anything but harmless beyond a reasonable doubt. *Chapman* v. *California, supra.*

Initially, the molested child's admissible testimony about sexual contact initiated by her father *during* the time frame charged in the indictment remains uncontroverted. Her credibility was unshaken. Conspicuous by its absence from the majority opinion is any reference to Thompson's written confession, state's exhibit No. 2, in which he admitted that he had engaged in sexual contact with the victim—his natural daughter. Finally, the jury had the benefit of the *corroborating* testimony of Sergeant Dennis Woods of the Newark Police Department, the investigating and arresting officer, to whom Thompson confessed by both the spoken and written word.

Thus, upon consideration of the foregoing independent, credible, admissible evidence of Thompson's guilt, I submit that there is no *reasonable* possibility that the improperly-admitted "other acts" testimony contributed to Thompson's conviction.

Nearly a half-century ago, Justice Cardozo, in refusing to set aside a state criminal conviction, made a perceptive observation that seems particularly timely for the 1980's: "There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." *Snyder* v. *Massachusetts* (1934), 291 U. S. 97, 122.

For all of the foregoing reasons, I can see no justice in the result engineered by the majority. Accordingly, I would reinstate the conviction for gross sexual imposition.

LOCHER and HOLMES, JJ., concur in the foregoing dissenting opinion.